IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

ALBERT KEITH HAYNES,

      Petitioner,

v.                                  CASE NO. 1:20-cv-3-AW-GRJ

SEC'Y FLA. DEPT. OF CORR.,

      Respondent.

_____/

## REPORT AND RECOMMENDATION

Petitioner Albert Keith Haynes filed a *pro se* petition for writ of habeas corpus under 28 U.S.C. § 2254 on January 2, 2020.  ECF No. 1.  In the petition, he alleges a fundamental error in his conviction based on a jury instruction, as well as violations of the Sixth and Fourteenth Amendments arising from a jury request to recess for the night before beginning deliberations.  *Id*.  On April 17, 2020, Respondent filed an opposition to relief on the basis of both exhaustion and the merits of the claims.  ECF No. 6.  On June 29, 2020, Petitioner filed his reply.  ECF No. 9.  For the

reasons that follow, the undersigned respectfully **RECOMMENDS** that the petition for writ of habeas corpus should be **DENIED**.[1]

## I.  BACKGROUND

### A. Procedural History

Petitioner is incarcerated for Armed Home Invasion Robbery, Carjacking with a Firearm or Deadly Weapon, Kidnapping, Battery, Assault, and Theft following a jury trial in June 2013 that resulted in guilty verdicts on those charges.  ECF Nos. 1 at 1; 6 at 2; 6-1 at 70–73, 142–147.  On June 27, 2013, Petitioner was sentenced.  He received a sentence of life in prison for the Kidnapping conviction; concurrent sentences of thirty years each for the Armed Home Invasion Robbery and Carjacking convictions; and a concurrent sentence of five years for the Theft conviction.  ECF Nos. 1 at 1; 6 at 2; 6-1 at 153–59.  Plaintiff received time-served sentences for the Battery and Assault convictions.  ECF No. 6-1 at 153–59.

Following his conviction, Petitioner filed a direct appeal through counsel that raised a single issue challenging a jury instruction on principal

---

[1]  Because the Court may resolve the petition on the basis of the record, an evidentiary hearing is not warranted.  See Rule 8, Rules Governing Habeas Corpus Petitions Under Section 2254.

liability.  ECF No. 6-4 at 16–17.  The appellate court affirmed Petitioner's

conviction in a per curiam decision.  ECF No. 6-6.  Petitioner then filed in

succession a motion to correct an illegal sentence, a motion for

postconviction relief, and a supplemental motion for postconviction relief.

ECF Nos. 6-7 at 30–31; 6-8.  The motions were denied.  ECF Nos. 6-7 at

31–32.  Petitioner appealed the denial of postconviction relief.  ECF No. 6-

8.  Petitioner's conviction was affirmed without opinion.  ECF No. 6-10 at 2–

4.

On January 2, 2020, Petitioner filed his § 2254 petition.  ECF No. 1.

In it, Petitioner raises two grounds for relief:  that the inclusion of the

principal instruction at his trial was fundamental error and that the denial of

a request from the jury to adjourn for the night before deliberating had a

coercive effect on the jury's verdict.  *Id*.  Respondent opposes relief.  *See*

ECF No. 6.

**B. The Trial**

The trial events relevant to Petitioner's claims are as follows:

During the second day of trial, after closing arguments concluded, the

trial court began to read instructions on the law to the jury for deliberation.

ECF No. 6-2 at 440–500.  An issue concerning the instructions arose

during delivery, and the trial court paused to conduct a bench conference with counsel. *Id*. at 463–68. When the bench conference concluded, the trial court addressed the jury:

> THE COURT: The bailiff has indicated to me that some of you, before we go on with the instructions, are expressing some concern about staying after 5:00 pm; is that right?
>
> UNIDENTIFIED JUROR: Would we be able to use the restroom?
>
> THE COURT: Oh, yeah. We can let you do that any time. But is there anyone who just cannot stay here to deliberate this evening that has to go home for some reason, maybe you have a child you have to pick up or something?
>
> JURY PANEL: (No response.)
>
> THE COURT: So I take it then, if -- we could have you deliberate tonight, then, and return a verdict as opposed to letting you go home tonight and having you come back in tomorrow and doing it tomorrow? Would you prefer to do it this evening? That's what we'd prefer to do, if all of you can do that.
> Does anyone have a particular reason why they would not be able to do that?
>
> JURY PANEL: (No response.)
>
> THE COURT: Okay. All right. We're going to stop and give you a restroom break here in a moment.

4

ECF No. 6-2 at 468-69.

The trial court continued addressing the jury to correct some errors in the hard copies of the instructions. *Id*. at 469–73. When the corrections were completed, the trial judge excused the jury for a ten-minute recess, with the transcript noting the time as 4:48 pm. *Id*. at 473. At 5:05 pm, the jury returned to the courtroom. *Id*. at 475. The following dialog occurred:

> THE COURT: All right. Ladies and gentlemen, thank you. And again, we apologize for the cutting and pasting of the jury instructions. It's a little unusual. Is everybody clear now on what we deleted and what we've added to the last—
> Yes, ma'am?
>
> UNIDENTIFIED JUROR: I just -- we talked when we were in the room and we decided that we think it might be best if we listen to the rest of the instructions and then deliberate tomorrow. We feel like it would be most fair to the defendant and most fair to ourselves as a group.
>
> THE COURT: Okay. What's counsels' thought on that?
>
> [DEFENSE ATTORNEY]: If that's what the jury's most comfortable with, then that's what we should do.
>
> THE COURT: Let me ask. Is there a particular reason why a juror might want to do that, like a personal reason, or is it simply because you're tired

5

and think it might be better to come back when you're a little fresher?

UNIDENTIFIED JUROR:    We feel we're mentally exhausted.

THE COURT:  All right.  Let me think about that and see.  Part of the—the other part of the equation is the logistics of the use of the courtroom tomorrow. Since I went and told the court administration at 10:30 this morning I was certain the trial was going to be over with today, so there might be some issues involved in that as well.  So I'm not sure whether I can accommodate that request or not.  But it might require me checking into something first.  All right?
So why don't we go ahead.

ECF No. 6-2 at 475–77.  A brief bench conference followed the

jury's request:

[PROSECUTOR]:    I don't know what your feeling is, but if we're going to come back tomorrow, why don't we stop reading and start the jury instructions—

THE COURT:  No, they're going to deliberate tonight.  That's what I'm going to do.  I'm just making it look like I'm thinking about it.  But in my mind that's a no-brainer.  We're going to have them go through tonight.

[PROSECUTOR]:  All right.

ECF No. 6-2 at 477.

6

The trial court concluded its delivery of the jury instructions.  ECF No.

6-2 at 477–500.  At that point, the trial court stated the following in

response to the request to adjourn for the evening before deliberating:

> THE COURT:  We have done some checking.  I'm
> afraid that we're going to have to have you deliberate
> tonight.  We cannot bring you back tomorrow.
>     So at this time what I'm going to do is, I'm going
> to give you the verdict form along with the -- all of the
> evidence that's been submitted.  And Mr. Bailiff will
> help you take that back there.  And we are going to
> send you back to begin your deliberations.
>
> [ . . . ]
>
>     So as soon as the alternate jurors remove their
> belongings, then we will let the six of you retire to the
> jury deliberation room.  We've made some coffee for
> you.  We have access to water for you.  If you think
> that you would like an evening meal, I'm willing to go
> ahead and order that for you.  If you want to go back
> and talk about it first, if you decide that you want
> something to eat, just let -- again, let the bailiff know
> on a written form that you want some food, what kind
> of food you want, and we'll do our best to get it over
> here for you.  All right?

ECF No. 6-2 at 500–02.

According to the record, the jury retired to deliberate at approximately

5:42 pm.  *Id*. at 504.  At 8:00 pm, the jury returned to the courtroom after

having sent the trial court two notes.  *Id*. at 504–14.  The questions

7

concerned an inconsistency on the verdict form and a request to clarify what was or was not said during a certain portion of testimony. *Id.* After receiving the answers to the questions, the jury retired at 8:05 pm to continue deliberations. *Id.* at 514–17. At 8:24 pm, the trial court went back on the record to take the jury's verdict. *Id.* at 519.

As part of the jury instructions provided after closing arguments, the jury was instructed on a principal theory of liability under Florida law. ECF No. 6-2 at 486–87. The first amended information on which Petitioner was tried did not include the state principal statute. ECF Nos. 1 at 5; 6 at 18–19, 23–24; 6-1 at 101–03, 117–38. Petitioner's trial attorney did not object to the inclusion of that instruction. ECF No. 6-4 at 16.

## II.  LEGAL STANDARD

### A.  The § 2254 Standard

Under 28 U.S.C. § 2254(d)(2) of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may not grant a state prisoner's application for a writ of habeas corpus based on a claim already adjudicated on the merits in state court unless that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Under

§ 2254(e)(1), "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." "'[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'" *Burt v. Titlow,* 571 U.S. 12*,* 18 (2013) (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010)).

As to legal findings, a petitioner is entitled to federal habeas relief only if the state court's adjudication of the merits of the federal claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1); *see Burt*, 571 U.S. at 18-19 (standard for reviewing claims of legal error by state courts is "highly deferential"). This standard "recognizes a foundational principle of our federal system: State courts are adequate forums for the vindication of federal rights." *Id*.

This highly deferential standard carries special force in habeas cases asserting ineffective-assistance claims: "Especially where a case involves such a common claim as ineffective assistance of counsel under

*Strickland*—a claim state courts have now adjudicated in countless criminal cases for nearly 30 years—'there is no intrinsic reason why the fact that a man is a federal judge should make him more competent, or conscientious, or learned . . . than his neighbor in the state courthouse.'" *Id*. (quoting *Stone v. Powell*, 428 U.S. 465, 494, n. 35 (1976)).

In view of the deference afforded to the state courts' adjudication of constitutional claims, the "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court.   AEDPA requires 'a state prisoner [to] show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error . . . beyond any possibility for fair-minded disagreement.'" *Id*. at 15-16 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011).  "'If this standard is difficult to meet'—and it is—'that is because it was meant to be.'"  *Id*. at 16 (quoting *Harrington*, 562 U.S. at 102).  "We will not lightly conclude that a State's criminal justice system has experienced the 'extreme malfunction' for which federal habeas relief is the remedy."  *Id*. (quoting *Harrington*, 562 U.S. at 102).

### B.  The Exhaustion Requirement

Before bringing a habeas action in federal court, a petitioner must

exhaust all state court remedies that are available for challenging his

conviction, either on direct appeal or in a state postconviction motion.  28

U.S.C. § 2254(b)(1), (c).  Exhaustion requires that petitioners give the state

courts a "full and fair opportunity" to resolve all federal constitutional claims

by "invoking one complete round of the State's established appellate review

process."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).  To properly

exhaust a federal claim, a petitioner must "fairly present" the claim in each

appropriate state court, thereby affording the state courts a meaningful

opportunity to "pass upon and correct alleged violations of its prisoners'

federal rights."  *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (quotation

omitted).

When a petitioner fails to properly exhaust a federal claim in state

court, and it is obvious that the unexhausted claim would now be

procedurally barred under state law, the claim is procedurally defaulted.

*Bailey v. Nagle*, 172 F.3d 1299, 1303 (11th Cir. 1999). Federal habeas

courts are precluded from reviewing the merits of procedurally

11

defaulted claims unless the petitioner can show either (1) cause for the failure to properly present the claim and actual prejudice from the default, or (2) that a fundamental miscarriage of justice would result if the claim were not considered. *Id*. at 1302, 1306.

### C.  The Standard for Ineffective Assistance of Counsel

Under *Strickland v. Washington*, to prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate that (1) his counsel's performance was below an objective and reasonable professional norm, and (2) he was prejudiced by this inadequacy. *Strickland*, 466 U.S. 668, 686–96 (1984).  The court may dispose of the claim if a defendant fails to carry his burden of proof on either the performance or the prejudice prong.  *Id*. at 697.

To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take."  *Grayson v. Thompson*, 257 F.3d 1194, 1216 (11th Cir. 2001) (emphasis omitted).  "The relevant question is not whether counsel's choices were strategic, but whether they were reasonable."  *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000).  There are no "absolute rules" for determining whether counsel's actions were indeed reasonable, as

12

"[a]bsolute rules would interfere with counsel's independence–which is also constitutionally protected–and would restrict the wide latitude counsel have in making tactical decisions." *Putnam v. Head*, 268 F.3d 1223, 1244 (11th Cir. 2001). "To uphold a lawyer's strategy, [the Court] need not attempt to divine the lawyer's mental processes underlying the strategy." *Chandler v. United States*, 218 F.3d 1305, 1314 n.16 (11th Cir. 2000) (en banc). "No lawyer can be expected to have considered all of the ways [to provide effective assistance]." *Id*. Stated another way:

> [i]f a defense lawyer pursued course A, it is immaterial that some other reasonable courses of defense (that the lawyer did not think of at all) existed and that the lawyer's pursuit of course A was not a deliberate choice between course A, course B, and so on. The lawyer's strategy was course A. And [the Court's] inquiry is limited to whether this strategy, that is, course A, might have been a reasonable one.

Id.

To show prejudice, a defendant must show more than simply that counsel's unreasonable conduct might have had "some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693. Instead, a defendant must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been

13

different." *Id*. at 694. A "reasonable probability is defined as a probability

sufficient to undermine confidence in the outcome." *Id*.

When the state courts have denied an ineffective assistance of

counsel claim on the merits, the standard a petitioner must meet to obtain

federal habeas relief is a difficult one. *Harrington*, 562 U.S. at 102. The

standard is not whether an error was committed, but whether the state

court decision is contrary to or an unreasonable application of federal law

that has been clearly established by decisions of the Supreme Court. 28

U.S.C. § 2254(d)(1). As the Supreme Court explained, error alone is not

enough because "[f]or purposes of § 2254(d)(1), an unreasonable

application of federal law is different from an incorrect application of federal

law." *Harrington*, 562 U.S. at 100 (internal quotation marks omitted). And

"even a strong case for relief does not mean the state court's contrary

conclusion was unreasonable." *Id*. at 102.

A federal habeas court "must determine what arguments or theories

supported or, [if none were stated], could have supported, the state court's

decision; and then it must ask whether it is possible fair-minded jurists

could disagree that those arguments or theories are inconsistent with the

holding in a prior decision of [the Supreme] Court." *Id*. So long as fair-

14

minded jurists could disagree about whether the state court's denial of the claim was inconsistent with an earlier Supreme Court decision, federal habeas relief must be denied. *Id.* Stated another way, only if "there is no possibility fair-minded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents" may the federal court grant relief. *Id.*

Even without the deference due under § 2254, the *Strickland* standard for judging the performance of counsel "is a most deferential one." *Id.* at 105. When combined with the extra layer of deference that § 2254 provides, the result is double deference, and the question becomes whether "there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id.* Double deference is doubly difficult for a petitioner to overcome, and it will be a rare case in which an ineffective assistance of counsel claim that a state court denied on the merits is found to merit relief in a federal habeas proceeding.

## III. DISCUSSION

### A.    The Jury Instruction on Principal Liability

Petitioner's first argument is that the trial court's instruction to the jury on a theory of principal liability constituted fundamental error in violation of

his Fourteenth Amendment right to due process.  ECF No. 1 at 4–5.

Petitioner focuses his argument on the fact that the Florida principal liability

statute was not included in the first amended information.  *Id*. at 6.

Respondent opposes habeas relief on the basis of exhaustion and

procedural default, or in the alternative, on the ground the claim is not

cognizable in a federal habeas proceeding.

### 1. Exhaustion and Procedural Default

Respondent first argues that the issue of the principal liability jury

instruction is procedurally defaulted because Petitioner failed to exhaust

the claim in state court.  ECF No. 6 at 15–17.  Respondent's argument, in

part, is as follows:

> While Petitioner filed a direct appeal, Petitioner labeled his claim in terms of fundamental error.  The claim on appeal was phrased as whether the state trial court committed fundamental error in giving the jury the law on principle instruction.  *Because the answer brief addressed the issue as one in state law, the claim was reasonably understood to raise a state law claim, not a federal issue of due process*.

*Id*. at 16 (record citations omitted) (emphasis added).  Respondent's

argument concerning exhaustion chiefly rests on the contents of the reply

16

brief—that is, on how the appellee responded to Petitioner's issue on direct appeal.

Respondent further states that Petitioner "mentioned in passing federal constitutional provisions and caselaw" but that those references did not present "the federal issue" "to the state court with argument in such a way to apprise of the [claim's] federal nature." *Id*. Finally, Respondent suggests Petitioner's claim was presented under state law. *Id*. at 16–17.

While close, Respondent's argument is ultimately not persuasive. "[A] petitioner need not use magic words or talismanic phrases to present his federal claim to the state courts." *Preston v. Sec'y, Fla. Dep't of Corr.*, 785 F.3d 449, 457 (11th Cir. 2015). Indeed, "a petitioner can exhaust his claim by, for example, 'including . . . the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim [as a federal one].' " *Id*. (citation omitted) (quoting *Lucas v. Sec'y, Dep't of Corr.*, 682 F.3d 1342, 1351 (11th Cir. 2012)).

Petitioner's briefing on the principal liability jury instruction in his direct appeal was limited to a page and a half. ECF No. 6-4 at 16–17. Petitioner's substantive argument begins by stating that "[t]he Sixth and Fourteenth Amendments to the United States Constitution require that a

17

charging document in a criminal case state the elements of the offense

charged . . . ."  *Id*. at 16.  A short time later, he asserts that "Article I,

Section 16 of the Florida Constitution contains a similar safeguard."  *Id*.  He

cites a case each from the Supreme Court, the Fifth Circuit, and Florida's

Fifth District Court of Appeal in support of his argument.  *Id*.  The final

citation in his briefing is in a footnote.  *Id*. at 17.  In the footnote, Petitioner

acknowledges a state authority that is contrary to his legal argument.  *Id*. at

17 n.1.

Respondent's briefing on this issue was not extensive, but his

argument was framed from the beginning as an issue arising under both

federal and state constitutional provisions.  The brevity could raise a

question of failure to present the constitutional argument but the Court

considers that other factors, including a merits analysis by Petitioner's

counsel, also would have informed the decision regarding the briefing

length.  Thus, the Court finds that the claim may be reviewed on its merits.

### 2. Merits

Petitioner argues that principal liability was an "uncharged, alternate

theory" of the crimes alleged in the amended information, and the jury

should not have been instructed on the theory.  ECF No. 1 at 5.  According

18

to Petitioner the error is fundamental and tantamount to being convicted for crimes with which he was not charged because the guilty verdicts may have been predicated on principal liability.  *Id*.

Respondent opposes relief arguing, in part, that Petitioner has not cited federal authority for his proposition and noting that state "caselaw puts [a] defendant on notice that [the prosecution] may proceed under both the perpetrator and aider and abettor theories of criminal liability."  ECF No. 6 at 24.  Respondent is correct on those points.

Petitioner has not disputed that the evidence taken at trial supported a principal liability instruction or that the substance of the instruction was correct.  Rather, his dispute centers solely on the idea that the theory was uncharged.  Regarding principal liability, the Florida Supreme Court has opined that:

> it is immaterial whether [an] indictment or information alleges that [a] defendant committed the crime or was merely aiding or abetting in its commission, so long as the proof establishes that he was guilty of one of the acts denounced by the statute.
>
> The underlying reason, to which the rule, as enunciated in the cited cases from *Albritton* [*v. State*, 13 So. 955 (Fla. 1893)] to the present time, is obviously pegged, is that the provisions of the statute, proscribing acts of aiding, abetting,

19

> counseling, hiring and procuring of criminal offenses,
> must be read into the formal charges against persons
> accused of crime, and that they coalesce with and
> become a part of the indictment or information
> alleging substantive offenses.

*State v. Roby*, 246 So. 2d 566, 571–72 (Fla. 1971) (citations omitted).

Thus, under state law, Petitioner was on notice that an aiding and abetting

theory of liability would be read into the amended information on which he

was tried.

Federal courts cannot grant § 2254 habeas relief unless state court

adjudication of the habeas claims "resulted in a decision that was contrary

to, or involved an unreasonable application of, clearly established Federal

law . . . ."  28 U.S.C. § 2254(d).  "As explained by the Supreme Court, the

phrase ' "clearly established Federal law" [in § 2254(d)] . . . refers to the

holdings . . . of [the Supreme Court's] decisions as of the time of the

relevant state-court decision.'"  *Ward*, 592 F.3d at 1155 (quoting *Williams v.

Taylor,* 529 U.S. 362, 412 (2000)).  "Federal habeas relief is unavailable

'for errors of state law.'  A jury instruction that 'was allegedly incorrect

under state law is not a basis for habeas relief.'"  *Jamerson v. Sec'y for

Dep't of Corr.*, 410 F.3d 682, 688 (11th Cir. 2005) (citations omitted).

Instead, "federal courts on habeas review are constrained to determine

20

only whether the challenged instruction . . . 'so infected the entire trial that the resulting conviction violate[d] due process.' " *Id*. (citations omitted) (quoting *Estelle v. McGuire,* 502 U.S. 62, 72 (1991).

Here, Petitioner identifies "fundamental error" in his petition and references the Sixth and Fourteenth Amendments in his reply brief (quoting his direct appeal) as authority for his argument that an inappropriate jury instruction allowed him to be convicted on uncharged crimes. However, *Roby* makes clear that defendants in Florida are on notice of the potential for conviction on a theory of principal liability regardless of a charging document's language, and *Jamerson* instructs that a district court's habeas review may only examine whether the challenged instruction "so infected" the trial that a habeas petitioner's due process rights were violated.

Petitioner does not substantively address the law under *Roby* and does not argue the content of the instruction was incorrect. His blanket invocation of "fundamental error" is insufficient, as is his reference to the Sixth and Fourteenth Amendments in his reply brief, which, in any event, cannot substitute for allegations in his petition. The Court also has not identified an authority supporting habeas relief. Instead, where instructions "fairly and correctly state[s] the law, [ ] they do not violate due process."

21

*Jamerson*, 410 F.3d at 690 (citing *United States v. Russell,* 717 F.2d 518, 521 (11th Cir.1983)).

Further, the Eleventh Circuit has affirmed at least one district court decision with a nearly identical claim in an unpublished decision. In that case, a state prisoner alleged Fifth and Sixth Amendment violations in a habeas action following the jury's instruction on principal liability by the court during his trial for robbery and kidnapping. *Phillips v. State*, No. 18-14056-H, 2019 WL 4785559, at *1, 3 (11th Cir. Apr. 19, 2019). The petitioner argued that the "charging document never put him on notice that the state would try him as a principal." *Phillips*, 2019 WL 4785559, at *3.

In its unpublished opinion, the Eleventh Circuit held that the "state postconviction court did not unreasonably apply clearly established federal law, or make an unreasonable determination of the facts, by denying this claim." *Id*. The Eleventh Circuit noted that the petitioner "did not contend that the instruction incorrectly stated the law on principal liability," and found that "[b]eyond that, [the petitioner] could have been convicted of the same crimes, regardless of whether he served as the principal actor or aided and abetted someone else in the crimes." *Id*. The Eleventh Circuit

22

cited *Roby*, *supra*, and acknowledged the limits of federal habeas review of state law jury instructions, as stated in *Jamerson*. *Id*.

Petitioner does not contend that the trial court incorrectly stated the law on principal liability when instructing the jury, and excluding that, petitioner could be convicted as a principal or as someone who aided and abetted under Florida law. Petitioner's claim should be denied.

### B. Immediate Jury Deliberations

Petitioner's second claim concerns the trial court's decision to have the jury begin its deliberations around 5:42 pm on the second day of trial, after the jury had stated their preference to return the next day because they felt "mentally exhausted." ECF No. 1 at 6. Petitioner contends that decision affected his right to "a fair, impartial, and competent jury." *Id*. at 7.

Respondent counters this claim is not exhausted because it was not raised on direct appeal. ECF No. 6 at 27. However, Respondent acknowledges that the issue was raised during postconviction proceedings in the context of an ineffective assistance of counsel claim, and Respondent addresses the merits of the issue in that manner. *Id*. Respondent adopts the facts and reasoning of the trial court's postconviction decision, which was affirmed on appeal by the First District

23

Court of Appeal without written opinion.  ECF Nos. 6 at 28; 6-7 at 100–10;

6-10 at 2–4.  The trial court's postconviction decision states:

> As to Ground Seven, Defendant alleges that trial counsel was ineffective for failing "to object to the judge's blatant abuse of discretion when he misled the jury."  During the reading of the jury instructions, the jury indicated to the court that it was "mentally exhausted" and wanted to return the following day to deliberate, instead of deliberating that evening.  *See* Trial Transcript at 431 (lines 2-19).  The court ultimately directed the jury to deliberate that evening.  *Id*. at 431 (lines 20-25)–432 (lines 1-20).  According to Defendant, had counsel objected, the court would have allowed the jury to begin deliberations the following day, when it was more refreshed.
>
> It is clear from the record that the court would not have acted differently had counsel objected.  *Id*.  The court would have had the jury begin deliberations regardless.
>
> The record additionally reflects that the jury was asked whether it would be able to begin deliberations; and, there was no initial objection by the jury to beginning deliberations.  *Id*. at 424 (lines 3-17).  And, despite the jury's subsequent request to break for the evening, the jury at no point indicated to the court that it was too exhausted to continue deliberations.  Thus, even if counsel did err by failing to object, Defendant's fails to show prejudice because there is no evidence that the jury reached their verdict arbitrarily.

> For these reasons, Defendant fails to show either
> error by counsel or prejudice.  Accordingly, the claim
> raised is without merit.

ECF No. 6-7 at 107.

When examining an ineffective assistance of counsel claim, a court may examine either prong of the *Strickland* test first, and if the prong is not satisfied, the court "need not address" the other prong.  *Ward v. Hall*, 592 F.3d 1144, 1163 (11th Cir. 2010) (finding that "because both parts of the test must be satisfied . . . , a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa").  The present claim is also a situation of "double deference," *supra*, meaning the question is "not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."  *Harrington*, 562 U.S. at 105.

Here, there is no reasonable argument that counsel satisfied *Strickland*'s deferential standard.  Petitioner cannot establish prejudice on this record.  To show prejudice, he "must demonstrate 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Harrington*, 562 U.S. at 104.  "A

25

reasonable probability" is defined as "a probability sufficient to undermine confidence in the outcome'" of the proceeding. *Id.*

First, it is unlikely that an objection from defense counsel to beginning deliberations the second day of trial would have swayed the trial court's resolve. The post-conviction court, which was affirmed on appeal, reasonably found the same. ECF No. 6-7 at 107. When questioned by the jury about returning to deliberate the following day, the trial court asked "What's counsels' thought on that?" ECF No. 6-2 at 476. Petitioner's trial attorney responded, "If that's what the jury's most comfortable with, then that's what we should do." *Id.* But at a bench conference that followed shortly after that exchange, the trial transcript indicates a very brief exchange between the prosecutor and the trial court. *Id.* at 477. In response to the prosecutor suggesting jury instructions be stopped until the next day if the trial court was inclined to begin deliberations then, the trial court responded, "No, they're going to deliberate tonight. That's what I'm going to do. I'm just making it look like I'm thinking about it. But in my mind that's a no-brainer. We're going to have them go through tonight." *Id.* at 477. No further discussion was had, and the trial court's position was firm.

26

Second, nothing in the record shows further concern from the jury or undue pressure to reach a verdict that day. The jury did not renew its request to break for the day or express discontent about deliberating. The trial court made coffee and water available to the jury and offered to order food for them. ECF No. 6-2 at 501–02. Notes sent by the jury a little more than two hours after deliberations began concerned the substance of the trial and the verdict sheet. ECF No. 6-2 at 504–14. Those questions were answered promptly, and shortly after that, the jury had reached its verdict. *Id*. at 514–17, 519. Examined in totality, it is not reasonably probable that commencing the jury deliberations the next day would have resulted in a different verdict because nothing in the record indicates exhaustion or coercion.

Under Florida law, "trial judges have broad discretion in the conduct of trials," but the circumstances under which a jury deliberates may not be such that the jury's verdict is rendered unreliable. *Thomas v. State*, 748 So. 2d 970, 980 (Fla. 1999). "Continuing court proceedings into the late evening hours unreasonably and often unnecessarily exhausts jurors and may deny a party effective or meaningful representation of counsel." *Shultheis v. Gotlin*, 919 So. 2d 546, 550 (Fla. 5th DCA 2005). However, an

27

unreliable verdict has been found only where, under a totality analysis,

extreme circumstances created an "atmosphere of coercion," such as in

*Thomas*.  748 So. 2d at 970, 976–77, 980.  In that case, the Florida

Supreme Court held that "exhaustive and pressured circumstances" called

the trial verdict into question after finding:  there were repeated informal

instructions given to the jury, urging them to reach a verdict; the trial

continued on a weekend, with deliberations lasting from Saturday until 4:30

am on Sunday "without respite"; and a highly emotional environment

developed, with some jurors crying and walking off.  *Id*. at 976–77, 980.

Under less extreme circumstances, Florida appellate courts have not found

a verdict to have been coerced or unreliable.  *See Clark v. State*, 379 So.

2d 97, 102 (Fla. 1979) (holding defendant "failed to demonstrate how he

was denied a fair trial by an impartial jury on the basis of the length of time

the jury deliberated").

Federal courts have also regularly found that a jury's long hours of

deliberation do not violate the right to a fair trial without more.  *Walls v.

McNeil*, No. 3:06-cv-237-MCR-MD, 2009 WL 3187066, at *47 (N.D. Fla.

Sept. 30, 2009), *aff'd sub nom. Walls v. Buss*, 658 F.3d 1274 (11th Cir.

2011) (citing *U.S. v. Mitchell,* 104 F. App'x 544, 548–49 (6th Cir. 2004)

(finding that a jury verdict returned at 1:30 a.m. was not the result of judicial coercion where there was no indication that the jury was tired or unable to continue); *U.S. v. Tubbs,* 461 F.2d 43, 47 (7th Cir.1972) (affirming jury verdict that was returned at 4:30 a.m. because nothing in the record suggested that the verdict was the product of juror exhaustion or fatigue); *U.S. v. Caracci,* 446 F.2d 173, 178 (5th Cir.1971) (finding that the length of time of jury deliberation is a matter of trial court discretion and without more cannot constitute coercion); *DeGrandis v. Fay,* 335 F.2d 173, 175–76 (2nd Cir.1964) (affirming verdict returned after twenty-eight consecutive hours of duty and deliberation and finding that a lack of sleep will not vitiate a jury's verdict "if its agreement was deliberate and voluntary and not due to fatigue and exhaustion")).

Here, the jury indicated its desire to adjourn following the close of instructions and prior to the commencement of deliberations, but once the jury was directed by the trial court to begin deliberations, it did not indicate it was "deadlocked, or exhausted, or that they were not actively engaged in constructive deliberations." *Shultheis v. Gotlin*, 919 So. 2d 546, 550 (Fla. 5th DCA 2005). There was no "evidence that the jurors in this case signaled that they were tired and wanted a recess," following the trial

29

court's granting of a recess during instructions but prior to deliberations. *Id*.; ECF No. 6-2 at 468-69.

The state court's decision of Petitioner's ineffective assistance of counsel claim did not result in a decision "that was contrary to," or that "involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1). Petitioner has not identified any Supreme Court cases supporting his position. The state postconviction court also did not make an unreasonable determination of the facts, as demonstrated by the trial transcript and record. Even more, this is a claim where "double deference" is due, which is a doubly difficult standard. *Harrington*, 562 U.S. at 105; *Johnson v. Sec'y, Dep't of Corr.*, 643 F.3d 907, 911 (11th Cir. 2011) ("Double deference is doubly difficult for a petitioner to overcome, and it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding."). This is not one of the rare cases meriting relief, and Petitioner's claim should be denied.

## IV. CERTIFICATE OF APPEALABILITY

Section 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. §2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000).  Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

Rule 11(a) also provides:  "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

truncated?

## V. CONCLUSION

Accordingly, it is respectfully **RECOMMENDED:**

1. The petition for writ of habeas corpus under 28 U.S.C. § 2254, ECF No. 1, should be **DENIED**.

2. A certificate of appealability should be **DENIED.**

**IN CHAMBERS** at Gainesville, Florida this 22nd day of July 2022.

*s/Gary R. Jones*

GARY R. JONES
United States Magistrate Judge

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control. A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**

32